# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CAROL A. MAURER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CAUSE NO.: 3:07-CV-218-TS |
| VICTORIA A. IEHL, GILLES LAMBERT, and TRANSFORCE, INC., | ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter is before the Court on the Plaintiff's Second Motion in Limine [DE 44], filed on August 22, 2008. The Plaintiff filed a Memorandum in Support [DE 45] of this Motion and attached a Transcript of Proceedings Before the Honorable Robert L. Miller, Jr. On September 4, 2008, Defendant Gilles Lambert and Transforce, Inc. filed an Objection [DE 58] to the Plaintiff's Motion. On September 5, 2008, the Court conducted a telephonic conference with counsel for the parties and indicated that it would be denying the Plaintiff's Second Motion in Limine. On September 7, 2008, the Plaintiff filed a Motion for Reconsideration [DE 63] and Memorandum of Law in Support [DE 64], asking the Court to reconsider its preliminary ruling on the Plaintiff's Second Motion in Limine and providing additional authority in support of her position.

The Plaintiff seeks to preclude the Defendants from introducing evidence or referring to any write-offs or reductions to the Plaintiff's medical bills by Medicare and her private health insurer. The Plaintiff argues that such evidence is irrelevant, confusing, prejudicial, and otherwise inadmissible pursuant to Indiana's collateral source rule, which is codified in Indiana Code §§ 34-44-1-1 and 34-44-1-2. In her Memorandum in Support, the Plaintiff argues that any such write-offs are part of the collateral source payments made by the State of Indiana and the

United States of America and are therefore inadmissible under the collateral source statute. She also urges that the write-offs or reductions were an insurance benefit conferred on the Plaintiff in exchange for the money she paid to her health insurance carrier in the form of premiums. The basic gist of the Plaintiff's argument is that the Defendants should not be able to show that the Plaintiff's medical bills were reduced or portions "written off" by Medicare and her private health insurance carrier apparently so that the Plaintiff's damages (should the trier of fact find for her) would be measured by the amount of her medical bills, not by what she is actually obligated to pay. The Plaintiff, in addition to discussing the Indiana statute, some Indiana precedents, and authorities from other jurisdictions, also relies upon an oral ruling by Judge Miller in *Rhodes v. Sam's East, Inc.* (Civil Number 3:05-CV-3) in which Judge Miller discussed a portion of the collateral source statute, referenced the common law collateral source rule, and excluded evidence of collateral benefits (write-downs) received from Medicare and the AARP.

The Defendants respond that the collateral source rule as enacted in the Indiana Code does not preclude the introduction of evidence regarding write-offs or reductions. In addition to the statute, the Defendants rely on Judge John Tinder's ruling in *Brumfiel v. United States of America*, No. 1:03-cv-1598, 2005 WL 4889255, 2005 U.S. Dist. LEXIS 43974 (S.D. Ind. Oct. 25, 2005).

When the subject matter jurisdiction of a federal district court is premised upon diversity jurisdiction under 28 U.S.C. § 1332, the federal district court is to apply the substantive law of the forum state in which the court sits. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002). The collateral source rule is a substantive rule serving substantive state policies regulating private transactions. *See, e.g., Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 880

2

(10th Cir. 2006); *cf. Shirley v. Russell*, 69 F.3d 839 (7th Cir. 1995) (certifying state substantive law question to Indiana Supreme Court in federal case). A federal court "is to ascertain the substantive content of state law as it either has been determined by the highest court of the state or as it would be by that court if the present case were before it now." *Allstate Ins. Co.*, 285 F.3d at 637. The Seventh Circuit has explained that, "in the absence of prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's intermediate appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court." *Id.* (citing authorities). The Supreme Court has instructed that, "[w]here an intermediate appellate state court rests its considered judgment upon the rule of which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940).

The Indiana common law collateral source rule prohibited defendants from introducing evidence of compensation received by plaintiffs from collateral sources (other than the defendants) to reduce damage awards. *Shirley v. Russell*, 663 N.E.2d 532, 534 (Ind. 1996). In 1986, the Indiana General Assembly abrogated the common law collateral source rule when it enacted the collateral source statute. *Id.*; *Pendleton v. Aguilar*, 827 N.E.2d 614, 620 (Ind. Ct. App. 2005). The Indiana Supreme Court has explained the effect of this abrogation on the common law rule:

> [T]he new statute abrogated both the substance and the procedure of the common law collateral source rule. Substantively, instead of tortfeasors being held fully

3

accountable for the consequences of their conduct, now victims may not recover more than once for each item of loss sustained. Procedurally, instead of evidence of collateral source payments being prohibited, now evidence of collateral source payments may not be prohibited except for specified exceptions.

*Shirley*, 663 N.E.2d at 535 (internal quotation marks, ellipsis, and citations omitted).

The Indiana General Assembly identified two purposes for the collateral source statute:

(1) to enable the trier of fact in a personal injury or wrongful death action to determine the actual amount of the prevailing party's pecuniary loss; and
(2) to provide that a prevailing party not recover more than once from all applicable sources for each item of loss sustained.

Ind. Code § 34-44-1-1. The Indiana Supreme Court has reiterated that the purpose of the collateral source rule statute is "to determine the actual amount of the prevailing party's pecuniary loss and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or wrongful death action." *Shirley*, 663 N.E.2d at 534-35. The statute directs courts in personal injury cases to allow the admission into evidence (among other things) proof of collateral source payments, except for the following:

(A) payments of life insurance or other death benefits;
(B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or
(C) payments made by:
(i) the state or the United States; or
(ii) any agency, instrumentality, or subdivision of the state or the United States;
that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought[.]

Ind. Code § 34-44-1-2(1). Under the statute, evidence of collateral source payments must not be excluded except in the case of the specified statutory exceptions. *Pendleton*, 827 N.E.2d at 620. The three categories of collateral sources that are excluded under the statute "share the characteristic that the collateral source benefit has been, in a sense, paid for by the plaintiff or the

4

plaintiff's family, either through premiums or taxes." *Knowles v. Murray*, 712 N.E.2d 1, 3 (Ind. Ct. App. 1999).

The application of the Indiana collateral source statute, however, has presented some challenges for courts. In 1996, in *Shirley v. Russell*, the Indiana Supreme Court answered a question certified by the Seventh Circuit regarding "[w]hether a monthly survivor benefit, which is paid to the surviving spouse of a deceased pension recipient in consideration for a reduction of the decedent's pension during his life, is a collateral source payment admissible into evidence." *Id.*, 663 N.E.2d at 533. The Indiana Supreme Court determined that when Mr. Shirley elected to reduce his monthly pension benefit to purchase the joint and survivor annuity, he paid directly for insurance benefits, and that such evidence of the joint and survivor annuity was not admissible in the estate's wrongful death claim. *Id.* at 536. Thus, the monthly survivor benefits paid to the widow were effectively insurance benefits for which the plaintiff or members of the plaintiff's family paid directly. *Id.*

In 2005, in *Pendleton v. Aguilar*, the Indiana Court of Appeals concluded that evidence of worker's compensation benefits and evidence of the plaintiff's employer's uninsured motorist benefits (for which neither the plaintiff nor his family directly paid) were admissible collateral source payments. *Pendleton*, 827 N.E.2d at 620-21, 625-26. The Indiana Supreme Court denied transfer of this case.

In 2007, in *Butler v. Indiana Department of Insurance*, the Indiana Court of Appeals concluded that medical provider write-offs because of Medicare and Medicaid do not constitute collateral source "payments" under the collateral source statute and thus that evidence of such write-offs is properly admissible. *Id.*, 875 N.E.2d 235 (Ind. Ct. App. 2007). On April 30, 2008,

the Indiana Supreme Court granted transfer of this case, and the case remains pending before that court. *Butler v. Indiana Dep't of Ins.*, 891 N.E.2d 46 (Ind. 2008).[1]

In 2008, in *Stanley v. Walker*, the Indiana Court of Appeals concluded that write-offs to medical expenses negotiated by the plaintiff's insurer amount to "insurance benefits" for which the plaintiff or a member of the plaintiff's family paid directly and that the evidence of such write-offs should be excluded when calculating the actual extent of the plaintiff's pecuniary loss. *Id.*, 888 N.E.2d 222 (Ind. Ct. App. 2008).

Two federal district court judges in Indiana reached differing conclusions regarding the application of the collateral source statute. In an oral ruling in *Rhodes v. Sam's East, Inc.* (Civil Number 3:05-CV-3), Judge Miller concluded that write-downs are not among the evidence of specified collateral benefits that must be admitted, and he thus excluded evidence of collateral benefits received from Medicare and the AARP.

Judge Tinder in *Brumfiel v. United States*, No. 1:03-cv-1598, 2005 WL 4889255 (S.D. Ind. Oct. 25, 2005) determined that the plaintiff could not exclude from evidence payments and/or agreements his insurance company made with medical providers that lowered the amount that he actually owes for his medical expenses. *Id.* at *10. For Judge Tinder, even though the written-off amount is technically not a collateral source "payment," the collateral source statute

---

[1] Under the Indiana Rules of Appellate Procedure, when the Indiana Supreme Court grants transfer, the case stands before the court in the same procedural poster as it did when it was initially filed in the Indiana Court of Appeals–the Indiana Supreme Court has "jurisdiction over the appeal and all issues as if originally filed in the Supreme Court." Ind. App. R. 58(A). Thus, when transfer is granted, the decision of the Indiana Court of Appeals is automatically vacated except for (1) a decision or portion thereof that is expressly adopted and incorporated by reference by the Supreme Court; or (2) a decision or portion thereof that is summarily affirmed by the Supreme Court. Ind. App. R. 58(A). As a consequence, it is difficult to know what the Indiana Supreme Court's grant of transfer in the *Butler* case means for purposes of predicting how that court would resolve the issue in this case and whether granting transfer signals that the court will go in any particular direction in constructing the collateral source statute and applying it in that case.

purports to limit double-recoveries and windfalls on the part of plaintiffs, and precluding defendants from presenting evidence of write-offs and reductions of plaintiffs' medical bills would permit plaintiffs to receive windfalls by recovering "phantom damages." *Id.* (citing cases).

In ruling on the Plaintiff's Second Motion in Limine and Motion for Reconsideration, the Court is guided primarily by the Indiana collateral source statute and the *Shirley* decision of the Indiana Supreme Court. The Court has also considered the opinions of the Indiana Court of Appeals, but the Indiana Court of Appeals appears to be divided in its view of the Indiana collateral source statute. The Court has also reviewed the rulings of Judges Miller and Tinder and is most persuaded by the ruling of Judge Tinder, which appears to be well established upon the language and purposes of the statute and the Indiana Supreme Court's construction of the statute in *Shirley*. In ruling on these pending Motions, the Court is seeking to give effect to the purposes of the Indiana collateral source statute, which is to enable the trier of fact to determine the actual amount of the Plaintiff's pecuniary loss and to preclude the Plaintiff from recovering more than once from all applicable sources for each item of loss sustained.

The Court finds that the Plaintiff has not established that the write-offs or reductions to her medical bills by Medicare and her private health insurer come within one of the statutory exceptions to the admissibility requirements regarding collateral sources. The write-offs do not qualify as insurance benefits for which the Plaintiff or members of her family have paid directly or as payments by the state of Indiana or the United States of America made to the Plaintiff as compensation for the loss or injury for which the action is brought. *See* Ind. Code § 34-44-1-2(1)(B) & (C). Therefore, the Court denies the Plaintiff's request to exclude from evidence write-offs and/or reductions of her medical bills by Medicare and her private health insurer that

7

lowered the amount that she actually owes for her medical expenses. Additionally, the Plaintiff has not shown that she is personally liable for the written-off amounts or that they represent any actual pecuniary loss to her.

For the foregoing reasons, the Court now DENIES the Plaintiff's Second Motion in Limine [DE 44] and the Plaintiff's Motion for Reconsideration [DE 63].

SO ORDERED on September 10, 2008.

                                            s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT
                                            FORT WAYNE DIVISION